OPINION
{¶ 1} Defendant-appellant, Matt Brown ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas, in which that court granted summary judgment against appellant and in favor of plaintiff-appellee, Nesco Sales Rental ("appellee") as to appellee's claims for breach of a personal guaranty.
 {¶ 2} The relevant facts are undisputed. Appellant was an employee of Superior Electric, a company located in Columbus, Ohio. He was one of several Superior Electric *Page 2 
employees who, in the course and scope of employment, would enter into equipment lease agreements with appellee, on behalf of Superior Electric. As was the parties' course of dealing, a Superior Electric employee would discuss with appellee's agent, via telephone, which pieces of equipment Superior Electric wished to lease and the term for which the equipment was needed. Then, appellee's agents would fax a lease agreement to Superior Electric. Appellee would have already filled out the information called for on each lease agreement form, such as the name and serial number of the equipment being leased, the names and addresses of the parties, and the price for the rental.
 {¶ 3} Often, but not always, appellee would also affix to the lease agreement a "sign here" sticker, or mark an "X" near the signature line indicating the lessee's (Superior Electric's) assent to the terms of the lease agreement. Also, sometimes, but not always, appellee would indicate a request that an individual sign the unconditional personal guaranty, which was located immediately preceding the agreement's signature blocks, by affixing a "sign here" sticker or marking the personal guaranty with an "X." However, no agent of appellee ever specifically discussed with appellant the personal guaranty during any telephone conversation pertaining to equipment leasing.
 {¶ 4} On November 21, 2001, appellant signed a lease agreement pertaining to two pieces of equipment. At the very bottom of the second page of the contract, he signed the signature block indicating Superior Electric's assent to the terms of the lease agreement. Specifically, he signed, "Matt Brown Brch. Mng." Immediately preceding this signature block, appellant also signed his name on the signature line for the personal guaranty. Specifically, he signed "Matt Brown." The personal guaranty section of the agreement looks exactly as follows: *Page 3 
 Guaranty The undersigned Guarantors (jointly and severally if more than one) unconditionally guarantee the prompt payment when due, whether by acceleration or otherwise, of each monthly Lease Payment and all other amounts due and payable under the foregoing Lease Agreement. To enforce the liability of Guarantors hereunder, Lessor shall not be required, first to (a) give Guarantors notice of Lessee's default; (b) repossess the Equipment; or (c) attempt to enforce the liability of the Lessees under the Lease Agreement. Lessor may from time to time accept late payment of rent and may extend the terms of this Lease Agreement without defeating or diminishing this continuing Guaranty. This is a guarantee of payment and not of collection.
 The Guarantors acknowledge that the execution of this guarantee is a material part of the consideration upon which Lessor relies in consummating this Lease Agreement and that this guarantee is executed as an inducement to the Lessor to consummate the Lease Agreement.
 By (Signature) X_______/s/_________ Date __________
 By (Signature) __________________ Date __________
 {¶ 5} Eventually, Superior Electric defaulted on the November 21, 2001 lease agreement and appellee filed suit to recover the monies owed under the contract. With respect to appellant, appellee sought the full amount owed pursuant to appellant's personal guaranty. Appellant raised the defense of fraud in the factum and filed a motion for summary judgment in which he argued that, based on such fraud, the personal guaranty was void and unenforceable.
 {¶ 6} Appellee also filed a motion for summary judgment, and filed a memorandum in opposition to appellant's motion for summary judgment, arguing that there was no fraud in the procurement of appellant's personal guaranty and that the same is valid and enforceable. The trial court agreed and granted summary judgment against *Page 4 
appellant and in favor of appellee. Appellant timely appealed and advances one assignment of error for our review:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.
 {¶ 7} We review the trial court's grant of summary judgment de novo.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp. Rels.Bd. (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. We review questions of law de novo. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm
(1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, citing Ohio Bell Tel.Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147, 593 N.E.2d 286.
 {¶ 8} In support of his assignment of error, appellant argues that the trial court erred in rejecting his defense of fraud in the factum because, he maintains, he demonstrated that the personal guaranty was void for fraud. Specifically, he points out that appellee's employees never mentioned the personal guaranty specifically, but only indicated that he should sign it by marking it with an "X"; the language of the guaranty is not prominent and is no more prominent than the text of the rest of the contract; the language of the guaranty is nearly illegible because it was faxed; and when appellant *Page 5 
asked about his personal liability, appellee's agents intentionally misrepresented to him that he was only signing on behalf of the company.
 {¶ 9} In response, appellee argues that even if appellant did not intend to obligate himself personally, and even if appellee's agents told him that he would not be personally liable, there is still no fraud in the factum because appellant could have become fully aware of the true character of the document he was signing had he only read it. Appellee also points out that, unlike cognovit notes, there is no particular language or separate delineation required for a personal guaranty. Nonetheless, it maintains, the line upon which appellant signed was entitled, "guarantor," the guaranty portion of the November 21, 2001 lease agreement is legible and unobscured by marks or stickers, and there is no evidence that appellant was prevented from reading the lease agreement and the personal guaranty, or from discovering their substance.
 {¶ 10} A guaranty is a "promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another who is liable in the first instance." Black's Law Dictionary (8th Ed.2004) 724. "A guarantor, by definition, is one who promises to be responsible for the debt, duty or performance owed byanother person." SDI/Columbus Equities L.P. v. Scranton (July 13, 1993), 10th Dist. No. 93AP247, 1993 Ohio App. LEXIS 3586, at *5, citing Solomon Sturges Co. v. The Bank of Circleville (1860),11 Ohio St. 153, 168. (Emphasis sic.)
 {¶ 11} The word "guaranty" is not necessary to create a contract of guaranty. George Banta Co., Inc. v. Huntington National Bank (Nov. 25, 1986), 10th Dist. No. 86AP 380. Indeed, there is no formulaic locution required for the formation of a guaranty; it is sufficient if the words used unequivocally create a guaranty a promise to answer for the *Page 6 
debt of another. Sherwin Williams Co. v. Chem-Fab, Inc., 6th Dist. No. L-05-1375, 2006-Ohio-3864, ¶ 10.
 {¶ 12} "The fact that the guaranty and the principal contract are written on the same paper or instrument does not affect the independence or separateness of the one from the other." Hursh Builders Supply Co.,Inc. v. Clendenin, 5th Dist. No. 2002CA00166, 2002-Ohio-4671, ¶ 18, quoting 52 Ohio Jurisprudence 3d (1997), 239-240, Guaranty and Suretyship, Section 3; Hacros Lumber Building Supplies,Inc. v. Swabado (June 30, 1998), 7th Dist. No. 96BA-66. Courts construe guaranty agreements in the same manner as they interpret other contracts. G.F. Business Equip, Inc. . v. Liston (1982),7 Ohio App.3d 223, 224, 7 OBR 285, 454 N.E.2d 1358. But if the words of the guaranty are plain and clear, then there is no need for the court to attempt construction. George Banta Co., supra.
 {¶ 13} The record in the present case reveals that the November 21, 2001 guaranty contained clear language creating an unconditional guaranty. The guaranty contains a clearly legible title and, though not required, the words "guaranty," "guarantors" and "guarantee" are present throughout its text. The signers of the guaranty are referred to therein as the "guarantors," and the guarantor "unconditionally guarantees the prompt payment when due, whether by acceleration or otherwise, of each monthly Lease Payment and all other amounts due and payable under the foregoing Lease Agreement."
 {¶ 14} The guaranty specifically states that it is a guaranty of payment and not of collection. A guaranty of payment is a "guaranty that is not conditioned on the creditor's exhausting legal remedies against the principal debtor before suing the guarantor" while a guaranty of collection is so conditioned. Black's Law Dictionary (8th
Ed.2004) 724. This is *Page 7 
consistent with the language stating that "Lessor shall not be required, first to * * * attempt to enforce the liability of the Lessees under the Lease Agreement."
 {¶ 15} Also consistent with the parties' intent to create two separate contracts is the difference between the signature blocks for the lease agreement and the guaranty. The lease agreement contains a signature block providing for one line to indicate the name of the lessee and another line to indicate the name of the lessee's authorized agent and the agent's title. The signature block for the guaranty contains only one line per guarantor, with space for a name and date.
 {¶ 16} The form and content of the personal guaranty are straightforward and clear and create an unconditional payment guaranty upon which appellant is liable unless the guaranty was, as he claims, procured by fraud in the factum.
 {¶ 17} Fraud going to the inducement of a contract is a defense to an action on that instrument. Gross v. Ohio Savings Trust Co. (1927),116 Ohio St. 230, 235, 4 Ohio L.Abs. 196, 156 N.E. 205. It is termed "fraud in the factum" where the maker is deceived as to the true character and effect of the instrument signed. Imperial Aluminum, Inc. v.Persuric (Aug. 6, 1981), 8th Dist. No. 42674. Fraud in the factum voids a contract ab initio when "* * *an intentional act or misrepresentation of one party precludes a meeting of the minds concerning the nature or character of the purported agreement. Thus, when the actions or representations of [one contracting party] so impair the mind and judgment of the [other party] that he fails to understand the nature of consequences of his [contract], there has been no meeting of the minds." Haller v. Borror Corp. (1990), 50 Ohio St.3d 10, 13,552 N.E.2d 207, rehearing denied (1990), 51 Ohio St.3d 704, 555 N.E.2d 322. *Page 8 
 {¶ 18} Fraud in the factum can exist only where an act or misrepresentation of one party causes another to agree to the [terms of the contract] without an understanding that he has done so * * *[.]" Id. at paragraph one of the syllabus. "However, where there is a mere misrepresentation by one party of the contents of a [contract], the agreement is not void for fraud in the factum when the [other party] has an opportunity to read and understand the document before its execution." Id. at 14. "A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed. * * * If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs." Dice v. Akron, Canton Youngstown RR. Co. (1951),155 Ohio St. 185, 191, 44 O.O. 162, 98 N.E.2d 301, reversed on other grounds (1952),342 U.S. 359; see, also, McCuskey v. Budnick (1956), 165 Ohio St. 533,60 O.O. 493, 138 N.E.2d 386.
 {¶ 19} In Campco Distributors, Inc. v. Fries (1987),42 Ohio App.3d 200, 203, 537 N.E.2d 661, the Second Appellate District observed:
 Generally, the rules as to mistake and relief against mistake which apply to contracts apply to guaranty agreements. A unilateral mistake by the guarantor as to the nature of the underlying transaction or by the creditor as to the capacity in which the guarantor signed may not be the basis for relief from the guaranty contract. The guarantor must necessarily be required to read the guaranty, to inquire as to facts which would be apparent to a reasonable person, and to understand the legal significance of the document which he is signing. Any mistake which could have been remedied by due diligence and which is not a result of imposition practiced on the guarantor by the creditor, or one acting under the creditor's authority, is not a basis for rescinding the guaranty contract if the creditor reasonably relied on the promise of the guarantor. *Page 9 
Ibid., citing 38 American Jurisprudence 2d (1968), Guaranty, Section 56. (Citations omitted.)
 {¶ 20} Thus, though Ohio courts have refused to hold a maker liable on a contract that was induced by fraud in the factum, they " * * *have been reluctant to find that the signing of an instrument was induced by fraud in the factum where the deception is attributable to negligence on the part of the maker. A frequent example of this is where the maker is of ordinary mind and is able to read and write and yet, in reliance upon the representation of another, he signs an instrument without reading it, even though he has had full opportunity or ample time to read the instrument." Imperial Aluminum, Inc. v. Persuric (Aug. 6, 1981), 8th Dist. No. 42674, 1981 Ohio App. LEXIS 10511, at *8. (Citations omitted.)
 {¶ 21} Therefore, "the law of Ohio seems to be clear that a person who is able to read a document he signs but fails to do so when the opportunity is afforded is not entitled to have such document set aside on the grounds that he was misled into signing a paper different from that which he intended to sign, at least in the absence of evidence that he was induced by the other party to such document into not reading it."Allen v. Mitchell (June 26, 1975), 10th Dist. No. 75AP-65, 1975 Ohio App. LEXIS 8332, at *17.
 {¶ 22} These long-settled principles apply in the present case. The text of the guaranty is legible. Though not required, a space between the guaranty and the numbered paragraphs of the lease agreement visually sets the two contracts apart. As noted earlier, the language creating the guaranty is clear. There is no dispute that appellant had the opportunity to read the language of the personal guaranty before he *Page 10 
signed it and, had he done so, he would have been fully aware of its character and import. Thus, appellant was not deceived as to the true nature of the instrument and was not prevented from having a meeting of the minds with appellee with respect thereto. Accordingly, he cannot demonstrate that the guaranty is void because of fraud in the factum, and the trial court correctly granted summary judgment in appellee's favor. As such, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 BROWN and FRENCH, JJ., concur. *Page 1