JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants Boris and Lydia Karaman ("the Karamans") appeal from the judgment entered pursuant to a jury verdict finding that plaintiff-appellee Paul Davis Restoration of Cleveland Metro West, dba Lora Enterprises ("Lora Enterprises") did not violate the Ohio Consumer Sales Practices Act ("CSPA") and/or the Home Solicitation Sales Act ("HSSA") and that the Karamans' breached their contract with Lora Enterprises. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} At trial, the following facts were established: In July 2001, the Karamans lived in a home located in Brecksville, Ohio. On July 19, 2001, their home flooded from a leaking toilet. The water damage was extensive because the home had a radiant heating system located under marble tile floors. The Karamans reported the incident to their insurer, State Farm.
 {¶ 3} The parties vehemently disagree about who made the first contact. According to the Karamans, Kathy Banfield, State Farm's agent, contacted Lora Enterprises about the flood damage and Lora Enterprises then contacted her. Lee Lora of Lora Enterprises stated that he does not initiate business with potential customers and that agents, adjustors, or property owners call in the losses. Kathy Banfield testified that she gave the Karamans the phone number of Lora Enterprises.
 {¶ 4} In any event, on July 20, 2001, Lora Enterprises came to the Karamans' home to assess the damage and repairs needed. While there, Lora Enterprises asked Mrs. Karaman to sign a work authorization, dated July 20, 2001, and an emergency authorization. The work authorization included a clause approving attorney fees in the event Lora Enterprises was not paid for its work.
 {¶ 5} Lee Lora submitted a repair estimate to Michael Merry, the State Farm adjuster handling the Karamans' claim. The work to be done to restore the Karamans' home approximated $36,000. The Karamans paid $20,009.29 to Lora Enterprises but refused to pay the balance of almost $15,000 because of a claim of poor workmanship.
 {¶ 6} On May 21, 2002, Lora Enterprises filed suit in the Garfield Heights Municipal Court seeking to recover the balance due because of the Karamans' breach of contract. Lora Enterprises also sought attorney fees as allowed by the contract.
 {¶ 7} The Karamans counterclaimed that Lora Enterprises had violated CSPA and HSSA. Subsequently, the Karamans removed the case to the Cuyahoga County Common Pleas Court. Lora Enterprises filed an amended complaint alleging tortious interference, defamation per se and per quod.
 {¶ 8} On November 17, 2003, the matter proceeded to trial. On November 21, 2003, the jury rendered its verdict in Lora Enterprises' favor on its breach of contract claim and its claim for attorney fees. The jury found no merit in the Karamans' claims under CSPA or the HSSA or Lora Enterprises' claims for tortious interference or defamation.
 {¶ 9} The trial court held a hearing to determine the amount of attorney fees Lora Enterprises should recover. That amount was determined to be $31,389.96. It is from these decisions that the Karamans now appeal and assign seven assignments of error for our review. Because the Karamans' first two assignments of error relate to the CSPA and the HSSA, they are addressed together.
 {¶ 10} "I. The jury made an erroneous factual finding when failing to find that Lora Enterprises violated the Ohio Consumer Sales Practice Act and in awarding attorney fees under the contract.
 {¶ 11} "II. The jury made an erroneous factual finding as to its determination that Lora Enterprises did not violate the Home Solicitation Sales Act."
 {¶ 12} In these assignments of error, the Karamans argue that the jury's verdict is against the manifest weight of the evidence. Specifically, the Karamans assert that the jury erred in finding that the transaction between the parties was not governed by the CSPA or the HSSA.
 {¶ 13} Manifest weight concerns whether the jury lost its way and created a manifest miscarriage of justice. State v.Thompkins (1987), 78 Ohio St.3d 380. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Dean v.Schill Architecture, Cuyahoga App. No. 84215, 2005-Ohio-1162.
 {¶ 14} The failure to comply with the HSSA[1]
constitutes a deceptive act or practice in connection with a consumer transaction in violation of the CSPA.[2] Thus, any violation of the HSSA is a violation of the CSPA. See R.C.1345.28. Here, the Karamans have not alleged violations of the CSPA independent of any violations of the HSSA. Rather, the Karamans assert that Lora Enterprises' failure to comply with the HSSA writing requirements of R.C. 1345.23(B) (the Notice of Cancellation) is a violation under CSPA.[3] Since the transaction falls under the CSPA, the Karamans claim that the jury erred in not finding the attorney fee provision in their contract to be contrary to law. According to the Karamans, attorney fee provisions are prohibited under CSPA. However, before we can reach this issue, we must determine whether the acts the Karamans are complaining about fall under the CSPA or the HSSA. In order for the HSSA to cover a transaction, it must be a home solicitation sale as defined by the Act. See NewPhila, Inc. v. Sagrilla, Tuscarawas App. No. 2001 AP 04 0033, 2002-Ohio-3485. R.C. 1345.21(A) defines a "home solicitation sale" as "a sale of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is then given to the seller or a person acting for the seller, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business."
 {¶ 15} There are exceptions to the applicability of the HSSA. See R.C. 1345.21 (A)(1) through (A)(6). Here, the jury could reasonably have believed that Lora Enterprises was exempt from the provisions of the HSSA for a number of reasons and therefore did violate the HSSA.
 {¶ 16} First, the jury could reasonably have believed that there was no solicitation of the Karamans, the underlying condition precedent to the entire applicability of the HSSA. Under R.C. 1345.21(A)(4), a seller is exempt from the HSSA if the buyer initiates the contact between the parties. Lora Enterprises presented evidence that Mrs. Karaman called them first. Mrs. Karaman, on the other hand, says Lora Enterprises called her first. The resolution of this dispute, and the credibility of the witnesses, was within the purview of the jury. State v. DeHass
(1967), 10 Ohio St.2d 230.
 {¶ 17} Next, Lora Enterprises is a water mitigation company that performed immediate water mitigation services to the Karamans' home after the flooding. The work was of an emergency nature since the onslaught of mold, etc. was an immediate concern. Necessary repairs have been found to be an exception under R.C. 1345.21(A)(6). See Smaldino v. Larsick (1993),90 Ohio App.3d 691 (the installation of a new furnace, on a cold, winter night, was a necessary repair and, as such, the work was exempted under R.C. 1345.21(A)(6)).
 {¶ 18} The manifest weight of the evidence supports the jury determination that Lora Enterprises' work did not fall under the HSSA. Since the transaction did not fall under the HSSA, the Karamans' reliance on Lora Enterprise's failure to provide a Notice of Cancellation as required under R.C. 1345.23(B) as the sole means from which to find a violation of the CSPA must necessarily fail. Since the CSPA does not apply, it also must follow that the jury did not err in finding that Lora Enterprises did not violate the CSPA by including an attorney fee provision in its contract.
 {¶ 19} The first and second assignments of error are overruled.
 {¶ 20} "III. The jury made an erroneous factual finding in not awarding the Karamans attorney fees."
 {¶ 21} In this assignment of error, the Karamans argue that they are entitled to attorney fees under the CSPA.
 {¶ 22} Pursuant to R.C. 1345.09(F)(1), the trial court may award attorney fees to the "prevailing party." Here, the Karamans were not entitled to attorney fees for two reasons: (1) there was no CSPA claim, and (2) they were not the prevailing party. Accordingly, the jury did not err in failing to award the Karamans' attorney fees.
 {¶ 23} The third assignment of error is overruled.
 {¶ 24} "IV. The court abused its discretion by instructing the jury that Karamans' right to rescind the contract had to be in a reasonable amount of time."
 {¶ 25} In this assignment of error, the Karamans argue that under the HSSA they had the right to rescind their contract at any time since Lora Enterprises did not provide them with a Notice of Cancellation.[4] We disagree. As we discussed supra, the HSSA does not apply in this case. Accordingly, the trial court did not err in failing to instruct the jury as such.
 {¶ 26} The fourth assignment of error is overruled.
 {¶ 27} "V. The court abused its discretion as to instructing the jury that they may allow attorney fees pursuant to Lora Enterprises' contract."
 {¶ 28} This assignment of error is almost identical to the first assignment of error. Specifically, the Karamans argue that the jury award of attorney fees to Lora Enterprises under the CSPA is contrary to Ohio law. However, since the CSPA does not apply in this case, we find that the trial court did not err in instructing the jury that they could award Lora Enterprises attorney fees under the terms of the contract.
 {¶ 29} The fifth assignment of error is overruled.
 {¶ 30} "VI. The trial court committed reversible error by its evidentiary rulings."
 {¶ 31} In this assignment of error, the Karamans argue that the trial court made several erroneous evidentiary rulings during the course of the trial.
 {¶ 32} The Karamans first argue that the trial court erred by permitting Lee Lora to testify as to what his employee said as to whom she talked to regarding the Karaman project.[5] Our review of Lee Lora's testimony reveals that he merely identified whom his employee spoke with. His testimony did not contain any out-of-court statements made by the employee who did not testify. Therefore, it is not hearsay, and the court did not err in admitting it.
 {¶ 33} Next, the Karamans contend that the trial court should have allowed Mrs. Karaman to testify that Lee Lora never told her that he had a showroom open to the public.[6] Such testimony would have been an exception to the hearsay rule as an admission by a party-opponent. Evid.R. 801(D)(2)(a). However, the Karamans have suffered no discernible prejudice from the erroneous exclusion of this testimony, and therefore, the error is harmless.
 {¶ 34} Finally, the Karamans argue that the trial court should have allowed Mrs. Karaman to testify about a telephone conversation she had with an employee from Lora Enterprises with regard to Philadelphia Flooring coming out to polish the marble flooring. Again, we agree that such testimony is not hearsay, as it was a statement made by an agent of the party-opponent. Evid.R. 801(D)(2)(d). However, as with the above mentioned testimony, the Karamans have suffered no discernible prejudice from the erroneous exclusion of this testimony, and therefore, the error is harmless.
 {¶ 35} The sixth assignment of error is overruled.
 {¶ 36} "VII. The trial court committed reversible error as to failing to award the Karamans' motion for directed verdict as to defamation per se, per quod, and tortuous interference."
 {¶ 37} The jury was charged on defamation per se, defamation per quod, and tortious interference. It returned verdicts in favor of the Karamans on all of these claims. The Karamans nevertheless argue that the trial court erred in denying their motion for directed verdict on Lora Enterprises' claims even though they prevailed at trial. The Karamans failed to argue or present any evidence on how the trial court's failure to grant the motion for directed verdict on Lora Enterprises's claims prejudiced them. Moreover, since the Karamans prevailed at trial on these claims, we find that any error in the court's denial of directed verdict to them on those claims is moot and harmless. See Kluss v. Alcan Aluminum Corp. (1995), 106 Ohio App.3d 528,535-536.
 {¶ 38} The seventh assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., and Corrigan, J., concur.
[1] R.C. 1345.21 to 1345.27.
[2] R.C. 1345.02.
[3] See, also, Assignment of Error IV, infra in this opinion.
[4] Pursuant to R.C. 1345.23(B), a buyer under a home solicitation sale contract retains the right to cancel the contract until the seller provides a Notice of Cancellation.
[5] Tr. 409.
[6] Tr. 586.