[Cite as *Cleveland Clinic Found. v. Internatl. Portfolio, Inc.*, 2014-Ohio-700.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### Nos. 99898 and 99988

---

# IPI II, L.L.C.

### PLAINTIFF-APPELLANT

vs.

# CLEVELAND CLINIC FOUNDATION

### DEFENDANT-APPELLEE

vs.

# INTERNATIONAL PORTFOLIO, INC.

### THIRD PARTY
### DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-786463

**BEFORE:**   Blackmon, P.J., McCormack, J., and Stewart, J.

**RELEASED AND JOURNALIZED:**      February 27, 2014

**ATTORNEYS FOR APPELLANT**

**For   IPI II, L.L.C.**

Stephen M. O'Bryan
Mark R. Jacobs
Jennifer B. Orr
Taft Stettinius & Hollister L.L.P.
200 Public Square, Suite 3500
Cleveland, Ohio 44114

**For   International Portfolio, Inc.**

Kathleen B. Havener
Thomas G. Havener
The Havener Law Firm, L.L.C.
15511 Russell Road
Chagrin Falls, Ohio 44022


**ATTORNEYS FOR APPELLEE**

Robert J. Fogarty
E. Sean Medina
Hahn Loeser & Parks L.L.P.
200 Public Square, Suite 2800
Cleveland, Ohio 44114

PATRICIA ANN BLACKMON, P.J.:

{¶1}   In this consolidated appeal, International Portfolio, Inc., ("International")

and IPI II, L.L.C. ("IPI II") appeal the trial court's decision granting summary judgment

in favor of Cleveland Clinic Foundation ("the Cleveland Clinic").    International assigns

the following errors for our review:

> I. In its Order and Opinion dated April 15, 2013 and entered
> April 16, 2013, the trial court erred in granting summary judgment in favor
> of third party plaintiff/appellee Cleveland Clinic Foundation (the
> "Cleveland Clinic") and against Appellant International Portfolio, Inc.
> ("International"), in concluding that the unambiguous intent of the parties in
> Master Purchase and Sale Agreement between the Cleveland Clinic (as
> Seller) and International Portfolio, Inc. (as Buyer) dated March 14, 2008
> (the "Master Agreement") (Exhibit A to Complaint) was to prohibit the
> resale of the Accounts, and thus declaring the later resale of the Accounts
> by International null and void.

> II. In its Order and Opinion dated April 15, 2013 and entered
> April 16, 2013, the trial court erred in denying International's/ Appellant's
> cross motion for summary judgment, in concluding that in signing the
> Master Agreement, and filing the concomitant UCC financing statement,
> the Cleveland Clinic did not unambiguously transfer and absolutely release
> all right, title, and interest in the Accounts to International, thus entitling
> International to resell the Accounts.

> III. In its Order and Opinion dated April 15, 2013 and entered
> April 16, 2013, the trial court erred in failing to find that any anti-resale
> provision in the Master Agreement in the context of a supposedly
> unconditional transfer is a restraint on alienation of property which is
> contrary to public policy and therefore unenforceable.

{¶2} In addition, IPI II assigns the following errors for our review:

I. The trial court erred in granting summary judgment to the Cleveland Clinic Foundation when the clear and unambiguous contract terms did not support summary judgment.

II. The trial court erred by denying IPI II LLC's cross-motion for partial summary judgment based on the plain terms of the CCF Bill of Sale and the CCF Sale Agreement.

{¶3} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

{¶4} On March 14, 2008, the Cleveland Clinic contracted with International in an agreement ("Master Agreement") where the Cleveland Clinic agreed to sell and International agreed to buy, certain underperforming accounts in the form of unpaid medical bills ("the Accounts") for healthcare services that had been rendered to patients of the Cleveland Clinic. The Master Agreement between the Cleveland Clinic and International contained a non-assignment clause and no resale provision designed to prevent International from reassigning or reselling the Accounts without the permission of the Cleveland Clinic.

{¶5} Less than six months later, International entered into a purchase and sales agreement and bill of sale with IPI II to sell, assign, and transfer the Accounts and the rights under the Master Agreement. Under their agreement, Section 7.8 provided that neither IPI II nor its agents shall direct or indirectly contact the Cleveland Clinic about any sale or transfer of the accounts from International. Thereafter, IPI II began collecting on the delinquent patient accounts.

{¶6} Four years later, IPI II notified the Cleveland Clinic that it had acquired all rights in the Accounts from International and demanded to be recognized as the new owners entitled to all rights under the Master Agreement. IPI II also demanded that the Cleveland Clinic provide full access to HIPAA protected information regarding the Accounts. The Cleveland Clinic refused to acknowledge IPI II as the successor to the Master Agreement and the Accounts and denied them access to the HIPAA information.

{¶7} As a result of the refusal, on July 6, 2012, IPI II filed suit against the Cleveland Clinic for replevin, accounting, injunctive relief and/or conversion. On August 13, 2012, the Cleveland Clinic filed its answer, counterclaim, and third party claim against International and IPI II. In its counterclaim and third party claim, the Cleveland Clinic sought declaratory judgment that the Master Agreement prohibited assignment of the Accounts, that the contract between International and IPI II was null and void as a result of the purported assignment of the Master Agreement.

{¶8} The Cleveland Clinic's counter and third party claim also sought declaratory judgment that IPI II did not own the Accounts, had no rights under the Master Agreement, and had no rights to collect on the Accounts. In addition, the Cleveland Clinic sought a permanent injunction barring IPI II from collecting or attempting to collect on the Accounts.

{¶9} On December 26, 2012, the Cleveland Clinic filed a motion for partial summary judgment asserting that the plain language of the Master Agreement prohibited International from assigning it or reselling the Accounts to IPI II. IPI II opposed the

motion and filed a cross motion for partial summary judgment. International also opposed the Cleveland Clinic's motion for partial summary judgment and filed its own motion for summary judgment.

{¶10} On April 16, 2013, the trial court granted the Cleveland Clinic's motion for partial summary judgment and denied the cross motions of IPI II and International. The trial court declared the sale between International and IPI II null and void and ordered that the Accounts revert to International.

## Summary Judgment

{¶11} We will address the assigned errors of International and IPI II collectively because of their common assertion that the trial court erred when it granted partial summary judgment to the Cleveland Clinic and denied their cross motions for partial summary judgment.

{¶12} We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays*, 140 Ohio App.3d 1, 746 N.E.2d 618 (8th Dist.2000), citing *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987); *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶13} Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) when viewing the evidence most strongly in favor

of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party.

**{¶14}** The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Brigadier Constr. Servs. v. JLP Glass Prods.*, 8th Dist. Cuyahoga No. 98672, 2013-Ohio-825, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id.*, *Dresher* at 293.

**{¶15}** In the instant case, the core contention of International and IPI II is that the Cleveland Clinic unconditionally conveyed the Accounts, free and clear of any encumbrances, to International through a separately executed Bill of Sale.

**{¶16}** The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. *Miami Trace Local School Dist. Bd. of Edn. v. Washington Court House City School Dist. Bd. of Edn.*, 12th Dist. Fayette No. CA2013-01-001, 2013-Ohio-3578, citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 1997-Ohio-202, 678 N.E.2d 519 (1997). To achieve this objective, we must examine the contract as a whole and presume that the language used reflects the parties' intent. *Gregory v. Reed*, 8th Dist. Cuyahoga No. 96459, 2011-Ohio-5182, citing *Shifrin v. Forest City Ents., Inc.*, 64 Ohio

St.3d 635, 638, 1992-Ohio-28, 597 N.E.2d 499. *See also Kelly v. Med. Life Ins. Co.,* 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus.

{¶17} Thus, when the contract is clear and unambiguous, the court may look no further than the four corners of the contract to find the intent of the parties. *Kauffman Family Trust v. Keehan*, 8th Dist. Cuyahoga No. 99423, 2013-Ohio-2707, citing *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus.

{¶18} In granting the Cleveland Clinic's motion for partial summary judgment and denying International and IPI II's cross motions for partial summary judgment, the trial court stated in pertinent part as follows:

> It is clear to the Court that in drafting and signing the Master Agreement with a non-assignment and no resale provision [Cleveland Clinic] and International intended to restrict International's ability to reassign or resale the Accounts to IPI II without first obtaining [Cleveland Clinic's] permission. Since International resold the Accounts to IPI II without first obtaining [Cleveland Clinic's] permission, then by the clear and unambiguous terms of the Master Agreement, that sale is null and void.

Journal Entry April 16, 2013.

{¶19} Upon review of the Master Agreement and the Bill of Sale, we determine both are clear and unambiguous. Section 8.2 of the Master Agreement, attached as "Exhibit A" to the Complaint, titled "Assignment," states in pertinent part as follows:

> [T]his Agreement including any of its rights or the performance of any of its obligations or duties may not be delegated or assigned by either party or by anyone else (whether voluntarily, involuntarily, operation of law, or via any other method or proceeding) without prior written consent of the other party. Any assignment or transfer of this Agreement contrary to the terms shall be null and void.

It is clear that Section 8.2 of the Master Agreement restricted the transfer that took place between International and IPI II.

**{¶20}** Nonetheless, both International and IPI II contend that the Master Agreement did not restrict an assignment of the Bill of Sale. We disagree.

**{¶21}** Page two of the Master Agreement defines the term "Agreement" as follows:

> Agreement means this Master Purchase and Sale Agreement, including all recitals, exhibits, information and schedules attached hereto or incorporated by reference. Whenever the term is used it refers to this Agreement as a whole and not to any particular or singular provision or section of this Agreement.

**{¶22}** Pivotally, the Bill of Sale is attached to and incorporated by reference in the Master Agreement as "Schedule 2.3." The Bill of Sale states in pertinent part as follows:

> For value received and pursuant to the terms and conditions of the Purchase and Sales Agreement [Master Agreement] between the Cleveland Clinic Foundation ("Provider") and International Portfolio, Inc. ("Buyer") dated March 14, 2008, the "Agreement" * * *.

**{¶23}** Here, given that the Bill of Sale was attached to and incorporated by reference in the Master Agreement, it too is subject to the restriction on assignment as articulated in Section 8.2 of the Master Agreement. As such, International's assignment of the Accounts to IPI II, without the prior written consent of the Cleveland Clinic, violated the terms of the Master Agreement.

**{¶24}** Finally, it is a long-standing tradition in the common law that all contract rights may be assigned except under three conditions. *Harding v. Viking Internatl. Res.*

*Co.*, 4th Dist. Washington No. 13CA13, 2013-Ohio-5236, citing   *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 488, 2006-Ohio-6551, 861 N.E.2d 121.

Of the three exceptions, the one relevant to the instant matter, is that if there is clear contractual language prohibiting assignment, an assignment will not be enforced. *Id*.

**{¶25}** Here, the clear and unambiguous language of the Master Agreement restricted International's ability to reassign or resell the Accounts without Cleveland Clinic's permission.   Consequently, the assignment at issue is null and void.

**{¶26}** Moreover, it is interesting to note that International and IPI II's agreement contains language that suggests they were aware that the Master Agreement prohibited such assignment.   Section 7.8 of the Purchase and Sale Agreement between International and IPI II, entitled "No Contact with Provider," specifically stated:

> Buyer hereby agrees that neither Buyer nor any of its affiliates, parent company, officers, partners, members, managers, employees, agents, and any related third parties associated with Buyer shall, directly or indirectly, (i) contact the Provider or (ii) notify the Provider of any sale or transfer of the Accounts.

International and IPI II abided by the above agreement for almost four years until Cleveland Clinic discovered the assignment as a result of a request from IPI II for HIPAA protected patient information.

**{¶27}** Based on the foregoing discussion, the trial court's decision granting partial summary judgment to the Cleveland Clinic, denying International and IPI II's cross motions for partial summary judgment, declaring the assignment null and void, and

ordering that the Accounts revert to International was proper. Accordingly, we overrule the collective assigned errors.

**{¶28}** Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


PATRICIA ANN BLACKMON, PRESIDING JUDGE

TIM McCORMACK, J., and
MELODY J. STEWART, J., CONCUR